# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **OVER THE RAINBOW, LLC**, a Michigan limited liability company,<br><br>          Plaintiff,<br><br>-vs-<br><br><br>**THE WAYNE COUNTY TREASURER**, a Michigan Charter County,<br><br>          Defendant. | Case No.<br><br>Hon.<br><br>Mag. |

Dawda, Mann, Mulcahy & Sadler, PLC
Donald R. Bachand (P45231)
Alfredo Casab (P53699)
39533 Woodward Avenue, Suite 200
Bloomfield Hills, Michigan 48304
(248) 642-3700
dbachand@dmms.com
acasab@dmms.com
Attorneys for Plaintiff

## COMPLAINT

Plaintiff Over the Rainbow, LLC, by and through its undersigned counsel, states as and for its Complaint as follows:

1.      Plaintiff Over the Rainbow, LLC ("Over the Rainbow" or "Plaintiff") is a Michigan limited liability company which conducts business in the County of Wayne, State of Michigan.

2. Defendant Wayne County Treasurer ("Treasurer" or "Defendant") is a Michigan Charter County that conducts business in the County of Wayne, State of Michigan.

3. This case arises under federal law, specifically the Constitution of the United States, and, accordingly, this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4. The Eastern District of Michigan is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims arose within this district and parties are located within this district.

5. This case seeks redress for that portion of the Michigan General Property Tax Act, MCL § 211.1 et seq. (the "GPTA"), that permits governmental units to keep the excess proceeds from tax foreclosures of real property unless the property owner complies with undisclosed, unnecessary, and unreasonable requirements to avoid such a result. As applied, the GPTA's requirements permit the Treasurer to divest a property owner, such as Plaintiff, of such a surplus in violation of due process, in violation of the takings clause, and in such a way as to constitute an excessive fine.

6. In sum and substance, the GPTA permits the recovery of unpaid real property taxes, penalties, interest, and fees through the foreclosure and sale of real property on which there is a tax delinquency.

7. As part of that process, tax-delinquent properties are forfeited to the county treasurers; foreclosed on after a judicial foreclosure hearing; and, if not timely redeemed, sold at a public auction.

8. Real property taxes are assessed and collected first by the city, township, or village treasurer where the property is located.

9. When property taxes are not satisfied and become delinquent, collection is turned over to the foreclosing governmental unit.

10. If the county elects to serve as a foreclosing governmental unit, the county treasurer then attempts to collect the delinquent taxes.

11. On March 1 of each tax year, taxes due in the immediately preceding year that remain unpaid are returned to the county treasurer as delinquent.

12. On March 1 of the year following delinquency, properties with delinquent taxes are forfeited to the county treasurer for the amount of tax delinquency, as well as any interest, penalties, and fees associated with the delinquency.

13. Once forfeiture occurs, the county treasurer must record a certificate of forfeiture with the county register of deeds, placing all parties with an interest in the property on notice that the property has been forfeited to the county treasurer, that the property has not been redeemed, and that absolute title to the property will vest

in the county treasurer on the March 31 immediately succeeding the entry of a judgment foreclosing the property.

14. Forfeited property may be redeemed at any time on or before that March 31 date if the total mount of unpaid delinquent taxes, interest, penalties, and fees are paid to the county treasurer.

15. Meanwhile, foreclosing governmental units must file a petition for foreclosure with the circuit court that presides over where the forfeited property is located by no later than the 15th day of June following the forfeiture.

16. The petition for foreclosure must seek a judgment in favor of the foreclosing governmental unit of the forfeited unpaid delinquent taxes, interest, penalties, and fees listed against each parcel of property and request that a judgment be entered vesting absolute title to each parcel of property in the foreclosing governmental unit, without right of redemption.

17. A judicial foreclosure hearing must be held in the circuit court within 30 days of March 1 of the year after the petition for foreclosure is filed.

18. After the judicial foreclosure hearing, the judgment of foreclosure must be entered by March 30, with an effective date of March 31.

19. Unless the delinquent taxes, interest, penalties, and fees are paid on or before March 31, fee simple title to the property vests absolutely in the foreclosing governmental without any further redemption rights available to the delinquent

taxpayer. Thereafter, the foreclosing governmental unit's title to the property is not subject to any recorded or unrecorded lien.

20. After foreclosure, and assuming the state, city, village, township, or county where the property is located does not purchase the property, the GPTA provides for one or more auction sales beginning on the third Tuesday in July immediately succeeding the entry of the judgment of foreclosure.

21. The sale proceeds are often insufficient to cover the full amount of the delinquent taxes, interest, penalties, and fees related to the foreclosure and sale of the property.

22. On occasion, though, there are excess proceeds from individual sales.

23. Prior to 2020, the GPTA did not provide for any disbursement of the surplus proceeds to the former property owner, nor did it provide former owners a right to make a claim for these surplus proceeds.  Instead, the surplus proceeds were transferred to the county general fund in cases in which the county is the foreclosing governmental unit.

24. Then, in 2020, the Michigan Supreme Court decided *Rafaeli, LLC v. Oakland County,* 505 Mich 429 (2020), and held that a foreclosing governmental unit's retention of the surplus proceeds after a sale was, among other things, an unconstitutional taking.

25. According to *Rafaeli*, once the foreclosing governmental unit foreclosed on the delinquent property, obtained title to the property, and sold the property to satisfy unpaid taxes, interest, penalties, and fees related to the foreclosure, any surplus resulting from those sales belonged to the property owner. So, while the foreclosing governmental unit was entitled to seize and sell property to satisfy unpaid delinquent real-property taxes as well as any interest, penalties, and fees associated with a foreclosure and sale, it could only collect the amount owed and nothing more.

26. Thus, to the extent the GPTA allowed foreclosing governmental units to retain surplus proceeds, *Rafaeli* held same to be an unconstitutional taking.

27. Within months after the *Rafaeli* decision, and in direct response to that decision, the Michigan legislature enacted MCL § 211.78t.

28. That statute includes a subsection, MCL § 211.78t(2), which provides that, for any properties that a foreclosing governmental unit sold at a tax-foreclosure sale after July 17, 2020, a former property owner who wants to seek surplus proceeds from the tax-foreclosure sale must file a notice of intent to seek the surplus with the foreclosing governmental unit by July 1 after the effective date of the foreclosure.

29. While the foreclosing governmental unit is required to send written foreclosure notices by certified mail to the property owner, there is no such requirement to alert such owners of their right to obtain any surplus proceeds.

Rather, the property owner is obligated to self-educate on the means and methods required to retain ownership of the surplus proceeds, and to discover on the internet the forms required to notify the foreclosing governmental unit that the property owner is not forfeiting its right to its money.

30. After the tax foreclosure sale, the foreclosing governmental unit must then notify the former property owners who filed a notice of the amount of surplus proceeds, if any, by the following January 31. MCL § 211.78tZ(3)(i).

31. The notice must include a statement that directs the claimant to file a motion in the circuit court in the foreclosure proceeding to recover any remaining proceeds. MCL § 211.78t(3)(k).

32. By the instant action, Plaintiff contends that MCL § 211.78t, at least as applied in this case, deprived Plaintiff of its right to due process, permitted an unconstitutional taking, and resulted in an excessive fine in violation of the United States Constitution.

33. Over the Rainbow was the owner of certain real property commonly known as 32200 Schoolcraft, Livonia, Michigan (the "Property"), bearing tax parcel number 46088990002002, and more particularly described as follows:

> 22AA2A2 PT SE 1/4 SEC 22 T1SR9E BEG N0DEG 04M 55S W 102FT AND S89DEG 46M 35S E 417.47FT FROM S 1/4 COR SEC 22 TH N0DEG 09M 10S E 174.70FT TH S89DEG SOM SOS E 240.79FT TH S0DEG 09M 10S W 175FT TH N89DEG 46M 35S W 240.79FT POB 0.97 AC

34. As the foreclosing governmental unit under the GPTA, the Treasurer initiated an action to foreclose various parcels of land within Wayne County, including the Property.

35. On March 29, 2023, the Wayne County Circuit Court entered a Judgment of Foreclosure against the Property.

36. On or about May 25, 2023, the United States Supreme Court decided *Tyler v. Hennepin,* 598 U.S. 631 (2023), holding, in sum and substance, that the failure to return a surplus to a property owner after a tax foreclosure sale constituted an unconstitutional taking. The holdings of *Tyler* and *Rafaeli* both sought to protect the property owner's right to the surplus proceeds arising from the foreclosure sale.

37. In September or October, 2023, the Treasurer sold the Property through a foreclosure sale for the sum of $674,850.

38. Upon information and belief, after the taxes, penalties, interest, and cost of the foreclosure and sale were taken into account, there existed a surplus of several hundred thousand dollars that is, or should be, the property of Plaintiff.

39. Pursuant to MCL § 211.78t, however, Plaintiff is only entitled to the excess proceeds of the Treasurer's sale if certain procedures are followed.

40. Specifically, MCL § 211.78t required Plaintiff by July 1, 2023, months prior to any sale, and before knowing whether there would in fact be any excess proceeds, to search out and find on the internet, and to submit to the Treasurer, a

8

notice indicating that Plaintiff wanted to keep property (the right to excess proceeds) that already belonged to Plaintiff.

41. Upon belief, the Treasurer provided Plaintiff with no written notice of Plaintiff's right to excess proceeds and Plaintiff has no recollection of ever being served with any such notice

42. While Plaintiff was unaware of the statutory scheme that required Plaintiff to claim its own property by July 1, 2023, Plaintiff did ultimately submit the statutory mandated form. While the form was submitted after the arbitrary July 1 deadline, it was before surplus proceeds were disbursed by the Treasurer. So, the Treasurer was in no way prejudiced by the timing of the submission of the form.

43. Upon information and belief, the Treasurer is nevertheless refusing to pay excess proceeds from the sale, as required by Michigan law, due to the purported failure to file the form on or before July 1, 2023.

44. The refusal by the Treasurer to pay Plaintiff the excess proceeds from the foreclosure sale constitutes a violation of Plaintiff's right to due process.

45. Plaintiff is entitled to notice and an opportunity to be heard prior to a deprivation of life, liberty, or property.

46. The GPTA requires that the foreclosing governmental unit to provide the property owner with specific notices by certified mail throughout the foreclosure process. But, when its comes to depriving the property owner of excess proceeds,

9

the GPTA includes no such notice requirement. Rather, the property owner is apparently required to self-educate and wade through the morass that is the GPTA to figure out how to preserve its right to the excess proceeds.

47. The adoption of MCL § 211.78t appears to be an attempt to continue the practice of improper governmental takings. Otherwise, the statute would have specific provisions obligating notice by certified mail or other means to property owners apprising them of their rights.

48. MCL § 211.78t simply does not employ means and methods reasonably calculated, under the circumstances, to apprise interested parties, such as Plaintiff, that the right to surplus proceeds will be lost if a form is not submitted by an arbitrary deadline.

49. Due process also requires a sufficient purpose to justify the governmental deprivation of a person's life, liberty, or property.

50. There is no logical or legitimate purpose for the arbitrary deadline of July 1 for property owners to claim their property. That date is prior to the foreclosure sale and before anyone know if there will be surplus proceeds. And, the need for any form at all is without legitimate purposes. The foreclosing governmental unit has all the information required to turn over to the property owner to the excess proceeds regardless of whether a form is submitted. That is, the Treasurer well knows the identity of the property owner, and knows the amount of

the surplus. To require additional information, or even a form, is to elevate form over substance.

51. The arbitrary deadline (and relatively short 90-day window) to file the notice serves no legitimate governmental purpose.

52. No reasonable lay person would have any reason to believe that during the short, approximately 90-day window between March 29, 2023, and July 1, 2023 (or prior) that there may be excess proceeds for which to apply.

53. No reasonable lay person would have knowledge, without being provided notice, of the need to apply for excess proceeds before it is known as to whether there are (or will be) excess proceeds.

54. So, for the Treasurer to not pay Plaintiff the surplus proceeds because a form was not submitted by July 1 constitutes a deprivation of property without due process.

55. Furthermore, by taking private property without a public use, Defendant violates the United States Constitution, which limits the government's power by prohibiting a taking of property in the absence of a "public use" and requiring that if property is taken, "just compensation" must be paid.

56. Foreclosing governmental units, such as Defendant, have no justifiable basis to take or keep the surplus proceeds of a foreclosed sale simply because a property owner did not submit a form indicating a desire to be paid such proceeds.

The United State Constitution precludes such arbitrary exercise of governmental power.

57. To the extent the GPTA authorizes or purports to authorize Defendant to take Plaintiff's property for reasons other than a public use without the foreclosing governmental unit providing notice to Plaintiff of its rights to claim excess proceeds, it is unconstitutional.

58. Moreover, the GPTA, as applied here, permits the taking of Plaintiff's private property without just compensation, which is a deprivation of Plaintiff's rights secured under the Fifth and Fourteenth Amendments to the United States Constitution.

59. In addition, confiscating the excess proceeds from a sale of Plaintiff's property is an excessive fine under Eighth Amendment to the United States Constitution.

60. When Defendant takes real property pursuant to a property tax forfeiture and retains the value or sale proceeds in excess of the amount owed, such retention is not purely remedial in nature but rather is retributive. Defendant's retention of value or equity belonging to Plaintiff therefore implicates the Excessive Fines Clause.

61. Similarly, under the United States Constitution, proportionality is the foundation of the constitutional inquiry under the Excessive Fines Clause. The

amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. The GPTA ignores these basic principles.

62.  As so eloquently stated by Justice Roberts in *Tyler v. Hannepin,* and by many others before, Plaintiff acknowledges that it ". . .must render unto Caesar what is Caesar's, but no more."

63.  Plaintiff has been injured and damaged by the unlawful excessive fines under the United States Constitution and are entitled to relief as a result.

WHEREFORE, Plaintiff requests that:

a. The Court find and declare that, to the extent the GPTA permits the Treasurer to retain surplus proceeds simply because a form was not filed by an arbitrary deadline, same is a violation of due process.

b. In the alternative, the Court find and declare that Defendant's taking of the surplus proceeds from the sale of Plaintiff's property for no public use violates the United States Constitution;

c. In the alternative, the Court find and declare that Defendant's taking and sale of the surplus proceeds was not attended by payment or securing just compensation and as such violates the United States Constitution;

d. In the alternative, the Court find and declare that Defendant's appropriation of the surplus proceeds is an excessive fine in violation of the United States Constitution;

e. The Court find and declare relevant provisions of MCL § 211.78t are unconstitutional under the United States Constitution, causing such confiscations and sales to be null and void and in violation of the United States Constitution;

f. The Court award Plaintiff damages and/or just compensation, including prejudgment interest, in an amount to be determined at trial and no less than the amount of the surplus proceeds;

g. The Court award Plaintiff its costs of this suit, including reasonable attorney's fees, as provided by law; and

h. The Court grant the Plaintiff such other and further relief as the nature of the case may require or as may be deemed just and proper by this Court.

## **JURY DEMAND**

Plaintiff demands trial by jury of all issues triable of right by a jury.

        Respectfully submitted,

        DAWDA, MANN, MULCAHY & SADLER PLC

        */s/ Donald R. Bachand*
        Donald R. Bachand (P45231)
        Alfredo Casab (P53699)
        39533 Woodward Avenue, Suite 200
        Bloomfield Hills, MI 48304
        (248) 642-3700
Dated: June 18, 2024        Attorneys for Plaintiff